Good morning, Your Honors. My name is Sandra Ronald, and I represent Ms. Kaur in the matter before this Court. In this case, the I.J.'s adverse credibility determinations are not supported by substantial evidence. Each ground cited by the I.J. for her adverse credibility findings must be evaluated according to Wayne v. Ashcroft. Talk a little louder. I'm sorry. The findings must be supported by reasonable, substantial, appropriate evidence in the record, and they can only be disturbed if a reasonable fact finder would be compelled to overturn it. If I got this case right, it looked to me like this lady's not really political. Yes, that's – Her husband was. Her husband and her father were. Her stories have changed a lot about exactly what happened and what she has – well, the inference is what she has to fear. If I could go through each matter that the judge brought up, I do not believe that her stories changed. As you're going through that, let me tell you the two that are of greatest concern to me. Okay. I don't know if Judge Kleinfeld has a different place he'd like to start, but I'll tell you the two that are of greatest concern to me, and that is the question of how long she was detained the first time she was arrested. She told the officer, the asylum officer, one day her testimony improved to one week before the immigration judge, and then the question of where she lived in the marriage certificate, because the two different cities are quite far apart and would seem to go to what kinds of activities she was actually engaged in, depending on which city she was living in. If you could, in your summary of other points, address those two, I would appreciate it. The first one is the marriage certificate. Ms. Kaur testified that her father and her husband obtained the certificate. She stated – Which would be different from the way that these things are ordinarily conducted according to the manual. Is that right? There was evidence to that in the record. No, Your Honor, because then she stated that she did sign the marriage certificate at the register. This was around the time that there was supposed to be some land transaction, and that's why they were obtaining the marriage certificate six years after the marriage. It says that she lived in Model Town? Well, there's a discrepancy as to the date. She said that she could not explain it. I think what she was trying to say is that she didn't fill out the application. She said that, like, it was customary for most ladies to do in India. She didn't read it when she signed it. That's at the record on page 273. Why couldn't it also be read? A sympathetic reading is just as you've said, and it may be the truth, but an unsympathetic reading would be she was just dancing around debating questions and making up stories. Why couldn't the IJ believe the latter possibility? Because she did say that she signed it at the register, and then the IJ recites the Foreign Affairs Manual, and, again, Ms. Kaur recites, I signed it at the register, and then she adds that that was at Hashiapur. You know, both before the IJ states she changed her testimony after the FAM was read to her, but even before the FAM was read to her, she stated that she signed the register. Her story is I signed it without looking at it, and it says that we live in Model Town, and we lived in Talwara. That's right, and she did submit. Why would somebody else who was filling out that application have put down Model Town instead of Talwara? They're, what, 60 kilometers away? They are 60 kilometers. She didn't offer any explanation as to that address. She said that she didn't know why it was put down. There was talk about it being customary for a woman to live with a husband's parents after the marriage, but she stated clearly from the beginning Model Town was her husband's hometown. Model Town is where her husband's family lived, but she stated clearly on the record that even before the marriage there was discussion that since she was the only daughter, she would live in Talwara with her family. But the place where they lived would have a substantial effect on the credibility of her subsequent testimony about the kinds of persecutions they experienced in Talwara if they're actually living in Model Town, right? Right, but what she stated is that she gave her testimony of where she lived. She also submitted two affidavits. The judge discounted those affidavits because she seemed to infer that because Ms. Kaur couldn't say who her husband knew prior to the marriage, that somehow these affidavits lacked credibility and because she couldn't identify the signatures of the individuals on the affidavits. But it's very common for a person to know somebody without actually knowing their signature, despite the amount of time that she may have known the individuals. And these individuals did state from their own personal knowledge that they knew her husband and that they knew he was involved in politics. Even if they didn't know him prior to the marriage, they may have been aware after meeting him that he was involved in politics prior to their marriage by personal conversations. My reaction was concern over a slightly different issue. When I tried to read her testimony, or I can't say I studied every word of it, but I went through it and I couldn't make sense of it. Partly it was because her answers were often unresponsive to the question. The question about one thing, she talks about another thing. And partly because she jumps around in time a lot and she interjects a whole lot of feelings, a whole lot of sentiments. Now, it may be that she's perfectly honest and she's just kind of a disorganized woman with a lot of emotions. And that's the way she talks. We all know people like that. It may also be that she's trying to blow smoke and confuse the immigration judge. We know people like that, too. In view of the fact that it's administrative agency review under a deferential standard, why isn't that enough to support the IJ's less charitable reading? Because she didn't change her testimony. She didn't change it from her asylum application to court. I don't know what her testimony was. She's all over the place. She is. She was a fairly disorganized witness, but that shouldn't discredit her in her testimony. What about the one-day, one-week problem on the first arrest? That would go to the heart of her claim. It's very clear in the asylum officer's notes. When she was arrested the first time, she said she was detained for one day. On the stand, she says, the first time I was arrested, I was detained for one week. Now, that's a pretty clear discrepancy in the record. What do we do with that? This court has held before that discrepancies such as the number of days of detention do not necessarily adversely affect the credibility. But that's pretty hard to go from one day to one week and say, well, I was arrested for one day, and then later on to say, oh, well, actually it was seven days. That's not a discrepancy saying that one day was really a day and a half. I can just reiterate what I've said. But I would like to say that there are so many times in this record where the immigration judge has stated that Ms. Kaur changed her testimony, wouldn't she, didn't. There are so many misconceptions of the immigration judge. The immigration judge stated that Ms. Kaur wasn't able to remember her father's political group, and yet she was. She gave the full name of the political group when she was asked on direct and on cross. The IJ also said that she wasn't able to give political goals. She wasn't asked political goals. She said that she knew that the AISSF worked with the group that her father was involved with, but she was never asked, as the judge seems to infer, to describe the recent history of India, including the partition. She states on her redirect that she studied political science. She graduated in 92 and didn't pursue any politics after that point. And so this is particularly difficult because it's just not part of the record. Had she been asked to describe these things and had she failed to do so, that would have been appropriate. She was never asked. I've combed through this numerous, numerous times, and it's just not there. The judge also seems to equate Ms. Kaur's lack of organization with a credibility issue. Then the judge mischaracterizes and says that, you know, there were two visits by the militants in 1989, perhaps a third that she alluded to, but I don't understand or remember, but there was no third that was alluded to. There were other minor visits that she said she received that the servants had on the farm, but none as severe as these first two in 1989. The IJ said that Ms. Kaur was trying to feel her way through the testimony, and I think that's what the court has alluded to here. But the asylum application clearly states that the first contact that the father and the husband had with the SSP was general in nature, and then they were summoned, and that's when the information regarding the militants became more specific, and that's when Ms. Kaur and her husband were forcibly taken into police custody. Thank you, counsel. Good morning, Your Honors. Lindsay Chytister on behalf of the Attorney General. May it please the Court. This Court should uphold the agency's decision and deny the petition for review. While the petitioner may have offered possible explanations or alternative findings that the IJ could have found, what she has not done is say that the record evidence compels reversal of the agency's decision. In this case, the immigration found that the petitioner was not credible, that she had not told the truth, and in that denied her applications for asylum, withholding of removal, and protection under the Convention Against Torture. Now, if I can just point to a few of those inconsistencies that the petitioner's counsel seems to indicate aren't there, I would say first, she claimed in her brief that she and her husband were summoned to the SSP, the police headquarters. Let's stay away from the brief. That's not under oath testimony by the petitioner. Yes, sir. Let's talk about the testimony. In her testimony, she first states she doesn't know how the police knew that the militants had found out about their family or had come to their home. She then states that their family went to a town meeting and had informed them, though not directly, of their own particular instances of problems with the militants, but generally speaking of problems of militants in the area. But when you go back to her testimony before the asylum officer, she said that she and her husband had never contacted the police about militants and that the first contact was with that summons. That's in the record on pages 283 and 84. Now, petitioner initially testified that they were, quote, which the immigration judge reasonably inferred meant someone was coming to get them. She then stated that they were summoned and told to report. She then changed her testimony again and said that it was her. Yeah, although you could be summoned by sending somebody out to pick you up and take you in, even if you weren't under arrest. I could say I want you to be in my office and I'll send a car around for you, and you might reasonably say that you were being summoned to come, right? Yes, Your Honor, that would also be a reason. That was a pretty tight reading. I have to say I was pretty unimpressed with the IJ's handling of that. I thought there was a lot of hollering in this case and not much smoke. Well, Your Honor, then she testified that she, her husband, and her father, all three drove down to the police station after being told to come, and that would be completely implausible because she says it was her father who paid her way out. It seems impossible that she would say that she and her husband first would go, that she was never even introduced or put into the room with the police officers. Then she says they were detained one week, where she told the asylum officer one day. That one concerns me. This is quantifiable. I can look at the record myself, and I can see the discrepancy there. But that one I think is critical, as I indicated to counsel for the petitioner. But I have to say that other than that, I thought that in this record the IJ faulted her for not being responsive and that many times I think that much of this conversation was conducted in Punjabi, wasn't it? Yes, Your Honor. Having done some translation work myself, it seems to me that the IJ was making her an offender for a word, to use a phrase out of Isaiah. Yes, Your Honor, but the IJ just didn't come up with one or two instances and stop there. The immigration judge identified numerous grounds, and even if you don't agree with one, if there's one that the immigration judge found accurately was an inconsistency and went to the heart of the claim, the analysis stops there. The immigration judge says substantial evidence would support the IJ's finding. And not only that, but also the issue regarding her education, which Petitioner's Counsel has brought up here, I just want to point the court to a statement she made in her own declaration attached to her application for asylum. She stated, her family were supporters of the Cali Party. The whole family enjoys reading newspapers and having family discussions about current affairs, especially sharing political views and thoughts with each other. That would completely contrast her testimony that she got a political science degree in 1992 and then selectively forgot everything she learned about political science and had no more contact with it. That statement was her own statement. Therefore, the immigration judge's — That's at page 740 in the record, Your Honor? Therefore, the immigration judge's reliance on her level of education and stating that the fact that she claimed to have a political science degree, and indeed did do so as evidenced in the record, and then to say that the reason she couldn't answer questions or couldn't articulate things about militants, things about what was going on in the Punjab, is because she didn't have an interest in it. And that would be a clear, clear error in her statement. As for Petitioner's Counsel's reference to her being able to identify her father's group in militants, while she might have been able to identify two militant groups before the immigration judge, before the asylum officer, she was not able to identify any. Therefore, her testimony was simply improving over time. Moreover, she also stated that she couldn't identify the militant group that was targeting her family. She was never able to identify who was targeting her family. For someone who was educated and had knowledge of the political events in the area, and was in fact claiming persecution by a group, she should at least be able to identify which group is targeting her and why. Also, another inconsistency was she told the asylum officer that her husband was the president of the AISSF. Now, she testified to the immigration judge that he was simply just a member. That can be found in the record at page 283 and also in her testimony between pages 188 and 191. When given the opportunity to explain it, which the immigration judge repeatedly did, she said, I don't remember. The immigration judge gave her ample opportunity in this case to clarify her statements, to rectify inconsistencies, because indeed she was jumping around a fair amount. But when given the opportunity to change her statement or clarify her statement for the judge, she couldn't do it. Now, you can parcel out inconsistencies and identify them only as looking at them in isolation with one another, and you can perhaps find a plausible explanation. But the immigration judge is looking at this testimony as a whole, and the inconsistencies continue to mount, and her explanations were insufficient for the immigration judge to find her to be credible. Moreover, the explanations provided in briefs and later statements are not the statements of the petitioner, and they certainly are not sufficient to overturn the immigration judge's adverse credibility finding in this case. With respect to the supporting letters that were introduced, the immigration judge didn't just kick them out because the petitioner didn't know the signatures. What the immigration judge asked her in questions were asked about it, she said, quote, I didn't pay special attention to these affidavits. And then she said she could not even testify whether the information in them was accurate or not. That's in the record between pages 262 and 263. Any suggested explanation in the brief of why it could or could not have been considered would require this Court to weigh evidence and evaluate the factual significance, which is not what the standard of review requires in this case. We're here just to find out if the immigration judge's adverse credibility finding that no reasonable adjudicator could find this person not credible. Unfortunately, before the asylum officer, before the immigration judge, and then the board, three different levels of review found this particular petitioner not credible. And therefore, if the Court has no further questions, I'd briefly conclude. Counsel, I'd like to follow up on one thing that you said. You said that she said at one point that her husband was president of the AISF, SSF. That was in the asylum officer's notes, Your Honor. Did you cite it page 283? I believe so, Your Honor. I don't see it. Is that the handwritten notes of the asylum officer? No, it's not. Okay. Let me see if I can find it. I'm sorry. I can see it now on this page. It's not the handwritten notes, but I do see on the typed notes. I do see at one point. Thank you. In sum, because the record does not compel a finding that the petitioner has told the truth, this Court should uphold the agency's decision and deny the petition for review. Thank you. Thank you, Counsel. Kor v. Gonzales is submitted.
judges: Kleinfeld, Bybee, Whaley